## Philips *versus* Commonwealth *ex rel.* James.

1. The Act of June 14th, 1836, § 2, Pamph. Laws 621, confers no jurisdiction upon the courts of common pleas of this Commonwealth to issue writs of quo warranto to persons holding positions in private corporations, except in questions concerning the exercise of strictly corporate offices. No authority is given to issue the writ against a mere servant, employé or agent of such corporations.

2. By the Act incorporating the University at Lewisburg, approved February 5th 1846, Pamph. Laws 32, it was provided, that the trustees named therein, and their successors, should constitute a body politic, that they should have power to transact all the business of the university, to elect a chairman, secretary, and other officers to manage its affairs, to enact proper ordinances for its government, to appoint the necessary professors and other instructors, and to remove them, or any of them, on sufficient cause being shown. The powers and duties of the professors thus appointed, were, by the terms of the said act, defined, and they were empowered, inter alia, to grant diplomas upon certain specified terms. *Held*, that a professorship in said university was not a corporate office in a private corporation within the meaning of the act of June 14th 1836, § 2, Pamph. Laws 621, and that therefore a writ of quo warranto could not be issued under the provisions of the said Act to any person to show cause why he acted in the capacity of professor in said university.

June 16th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Union county :* Of May Term 1881, No. 174.

Quo Warranto, by the Commonwealth of Pennsylvania, at the relation of Charles S. James, directed to George Morris Philips, requiring him to show by what authority he exercises the office of professor of mathematics and natural philosophy in the University at Lewisburg, Pa.

Upon answer and replication filed, issue was joined, and the case was tried before BUCHER, P. J., and a jury, when the following facts appeared :

The University at Lewisburg was incorporated by Act of Assembly approved February 5th 1846 (Pamph. L. 32), which provides, inter alia, as follows :

ARTICLE II, SECTION I. The said university shall be under the management, direction, government, and supervision of a number of trustees, not exceeding twenty, and a number of

[Philips *v.* Commonwealth *ex rel.* James.]

curators, not exceeding forty, or a quorum of each as herein-after mentioned.

SECTION 2. . . . . Five or more of the trustees shall be a quorum of the trustees, and seven or more of the curators shall constitute a quorum of the curators.

ARTICLE III, SECTION 1. The trustees of said university shall consist of the following persons, (naming them) which said trustees and their successors . . . . are hereby created, established, and declared to be a body politic and corporate, . . . . by the name, style and title of "The Trustees of the University at Lewisburg." . . . .

SECTION 4. . . . . If a quorum of said trustees meet at the appointed time, or at any time of adjournment, then the majority of the votes of such quorum or board shall be capable of doing and transacting all the business and concerns of said university not otherwise provided for by this act, and particularly of making and enacting ordinances and by-laws for the government and instruction of said university ; . . . . of electing and appointing the president, professors, tutors, and others teachers of said university ; of agreeing with them for their salaries and stipends ; of removing them for misconduct, breaches of the ordinances of the institution, or other sufficient cause.

ARTICLE IV, SECTION 1. The president, professors, tutors, and other teachers, or a majority of them, shall constitute the faculty of the university, and in their respective departments shall have the power of enforcing the rules and regulations adopted by the trustees for the government and instruction of the students ; and the president and professors, with the counsel and consent of a quorum of curators, shall have the power to grant and confirm unto the students of the University, or unto others deemed worthy, such degrees in the liberal arts and sciences or in certain branches thereof, as have been usually granted in other universities ; to grant likewise, to said graduates, diplomas under the common seal of the corporation, in order to authenticate and perpetute the memory of such graduation ; and to grant, also, certificates to such students as have duly completed the course of studies prescribed in any subordinate department of the University.

The by laws of the corporation provide, inter alia, as follows:

II. THE FACULTY.

2. No member of the faculty, without the consent of the trustees, shall engage in any occupation that interferes with the punctual discharge of his official duties.

### III.  THE PRESIDENT.

7. It shall be his duty to report to the trustees the deficiencies, incompetency, mal-administration or unofficer like conduct of any instructor, when in his judgment the case requires it.

Charles S. James, the relator, was appointed by the trustees professor of mathematics and natural philosophy, about August 19th 1851, and continued to occupy the chair, his salary being annually regulated by the trustees, until June 26th 1877, when the president of the faculty, in a written communication to the trustees, specifically charged him with negligence and inattention in the performance of his duties, and factious opposition toward him, the president, and with giving his time to other business outside the university. Professor James requested to be permitted to present a written answer. After voting to hear the matter upon written testimony only, the board adjourned to meet July 24th, for the consideration of the case. Professor James had notice of the meeting, and presented a written defense, letters, &c., which were heard by the trustees, who thereupon requested his resignation. Professor James refused to resign. No other proceedings were afterwards had, except that the board met again on September 3d 1877, and discharged him from their employment by the following resolution :

" *Resolved,* That the connection of Professor C. S. James with the faculty of the university, in the capacity of professor of mathematics and natural philosophy, be and the same. is hereby determined, for the causes set forth by the president of the university in his special report to the board, submitted on the 26th day of June, A. D. 1877 ; and that a committee of three members of the board be appointed to inform Professor James of this action, and to likewise inform him that the board of trustees no longer desire his services in that capacity."

George Morris Philips, the respondent, was afterwards chosen to, and has since filled, the chair of professor of mathematics, &c.

Professor James afterwards filed the information on which this writ of quo warranto was issued. The respondent moved the court to quash the writ on the ground, inter alia, that the position of professor in the university was not a corporate office such as to entitle the relator to a writ of quo warranto, and the court therefore had no jurisdiction to issue the same.

The court in the general charge said, inter, alia :

" The issue to be determined by the jury then is whether the plaintiff was legally removed from the professorship in this university and the defendant elected to fill the vacancy. This issue has not been framed with technical accuracy ; but this

[Philips *v.* Commonwealth *ex rel.* James.]

statement of it involves the question for adjudication here. The first material inquiry that presents itself is, What is the status of a professor in this university? This properly involves a question of law for the court, with which the jury have nothing whatever to do. We will first determine as a matter of law the status of a professor in this university, because we have been invited to do so by the motion of the defendant to quash the writ for want of jurisdiction in the court to award it. The learned counsel for the defendant concede that if a professorship in this university be an office, the incumbent could not be removed at the pleasure of the trustees; but it is denied that a professor in this corporation holds an office. It is insisted with vehemence that he is a mere employé removable at the pleasure of the trustees. . . .

. . . "We gather, then, from the plain language of the charter of this corporation that the trustees and curators are officers of this corporation; that the trustees choose the professors, and that they, when chosen, are officers of the corporation as well as the trustees and curators; and that as such officers they are intrusted with the duty, in conjunction with the curators, in conferring degrees, and granting diplomas. That the granting of these degrees is the exercise of a corporate franchise cannot be doubted. [Even if the authority to confer degrees existed independently of the franchise, it is clear that the charter grants this power. The power being granted by the charter, it is exercised under the sovereign power of the Commonwealth; and it follows that those who undertake to exercise this power are the officers, and not the employés of the corporation; we have seen that the professors, being chosen by the trustees under the charter, exercise this power independently of them, and are in no way amenable to them, nor subject to their control.] Indeed, the prime object in creating the University was to afford the youth of the land the benefits and advantages of a polite and refined education, and to enable those who had qualified themselves, in the judgment of the faculty and curators, to receive the degrees usually conferred by such institutions. It is no answer to all this to say, that the trustees are the corporation and the only officers of the same. . . . It is true, the duty of selecting the professors is imposed upon the trustees; but when this duty is discharged and the professors are chosen they become the real motive power of the corporation, and they alone can fulfill the very, and we may say the sole, purpose of its creation. . . . .

"[We are constrained to hold that a professor in this institution is more than a mere employé, and that, having been chosen by the trustees, he cannot be removed by them *ad libi-*

*tum*, as could a mere janitor, coal-heaver or other employé; but that the amotion or removal must be for cause shown.] . . . . . . "[Upon all the evidence we instruct you to find for the plaintiff.]"

Verdict, accordingly, for the plaintiff. The court, thereupon, entered judgment ousting the respondent from the said office of professor.

The respondent took this writ of error, assigning for error the refusal of the court to quash the writ, and the portions of the charge inclosed within brackets.

*J. W. Simonton* (with him *Charles S. Wolfe* and *George H. Irwin*), for the defendant in error.—The jurisdiction invoked is that conferred on the Common Pleas by act of June 14th 1836, section 2 (Pamph. L.      ), to issue writs of quo warranto "in case any question shall arise concerning the exercise of *any office in any corporation* created by authority of law, and having the chief place of business within the respective county." It is settled that in England, and here, under the statute, the writ will lie only when the question is in reference to a technical *corporate office*, and will not be granted against a mere servant, agent or employé of a corporation: High's Ex. Leg. Rem. § 653; Commonwealth *v.* Murray, 11 S. & R. 73; Gunton *v.* Ingle, 4 Cranch C. C. Rep. 438; The King *v.* Corporation, 6 East 356; People *v.* Hills, 1 Lansing 202; State *v.* Champlin, 2 Bailey 220; Commonwealth *v.* Dearborn, 15 Mass. 125.

The position of professor in this university is not such a corporate office. The charter declares that the *trustees* and their successors (alone) "shall be forever hereafter, and *they* are hereby created, established and declared to be a body politic and corporate, with perpetual succession, by the name, style and title of 'The Trustees of the University at Lewisburg,'" &c. The trustees shall elect or appoint and remove the professors and agree with them for their salaries or stipends. Their discretion is ample to create, modify or abolish any branch of study, and the creation by them of a professorship does not endow it with a fixed term of existence or give any holder of it a tenure as of a corporate office; the charter does not name or require the creation of any particular professorship, or fix any term, for the holding of such position; its only recognition of the professors is of them as a *body*, for the time being, who are to act, in conjunction with others, in conferring degrees; they are not named, as individuals, nor is any corporate franchise conferred on them and their successors.

The question what is a corporate office has frequently been judicially determined, and the following authorities support our

[Philips v. Commonwealth *ex rel.* James.]

contention that the professorship in this case is not one : Hoke
v. Henderson, 25 American Decisions 677 ; Commonwealth v
Murray, 11 S. & R. 73 ; Commonwealth v. Cuyler and Agnew,
5 W & S. 275 ; Field v. Girard College, 4 P. F. Smith 233 ;
State v. Kupferle, 44 Missouri 154 ; People v. Hills, 1 Lansing
202; State v. Champlin, 2 Bailey 220 ; Commonwealth v.
Dearborn, 15 Mass. 125 ; Queen v. Mousley, 55 Eng. C. L.
Rep. 945 ; Commonwealth v. Christian, 9 Phila. Rep. 556.   In
the last cited case PAXSON, J., said :   "An officer of a corpo-
ration has certain rights which are incident to his position, and
which are not enjoyed by a mere employé.   His duties, the
mode of his election and his term of office, are defined by the
fundamental law of the corporation itself."

But this court has already determined that this very pro-
fessorship in controversy is not a corporate office.   In Union
County v. James, 9 Harris 525, in which the present relator
was defendant, the question for decision was whether Professor
James was liable to taxation for State purposes to the amount
of two per cent. as the holder of an *office*, or to only one per
cent., the tax imposed on *professions* or *occupations*, under the
Act of April 29th 1844.   The charter was duly considered,
and this court held : " The defendant is not, however, properly
an officer of the corporation, but a person in its employment,
and his salary ought to be taxed only one per cent., as for an
occupation or profession."


*J. M. Linn* (with him *A. H. Dill, Charles R. James* and *S.
P. Wolverton*), for the defendant in error.—We contend that a
professor in a university is a corporate officer.   A corporation is
an artificial body to whom the state delegates part of its sov-
ereignty as a franchise ; and a corporate officer is one whose
right and duty it is, alone or as one of several, to execute the
franchise.   By the charter the pre-eminent franchise of this
university is to grant degrees, and by the same instrument " the
president and *professors*, with the counsel and consent of a
quorum of the curators, shall have the power to grant and con-
firm unto the students of the university, or unto others deemed
worthy, such *degrees* in the liberal arts and sciences as have been
usually granted in other universities ; to grant, likewise, to
said graduates, diplomas *under the common seal of the corpora-
tion*, in order to authenticate and to perpetuate the memory
of such graduation."

The corporation may be called by any name, but the *fran-
chise* is the vital thing fixed by the charter ; the trustees are
authorized to set the machinery in motion, and supervise its

[Philips *v.* Commonwealth *ex rel.* James.]

routine.operation, but they have absolutely no power to execute the real franchise, or to compel or to forbid its execution by those to whom the charter delegates that right and duty. The seal of a corporation can be attached only by an officer of the corporation, not by an employé. If the *professors*, with the president, and with the consent of the curators (a mere advisory body), had duly awarded a degree, and the trustees had locked up the corporate seal, mandamus would lie to compel them to permit it to be affixed to the diploma by the officers. A degree is valuable property, and the officers who grant the .degree have a property in their corporate office of which they cannot be deprived except *per legem terræ*, and to inquire into the title of which the Commonwealth's writ of quo warranto lies. The charter refers to the "*official* doings of the faculty," and provides that no religious sentiments shall debar election to "any *office* among the teachers of the institution." The by-laws also recognize the official character of the professors; section 8 provides for meetings of "the faculty, at which each *officer* shall be assigned his part of the course of instruction."

The numerous cases cited by the other side as to who are corporate officers generally, or under other charters, are not applicable, because we must be guided by our own charter alone. It is said the status of a professor in this university has been decided by this court in Union County *v.* James, 9 Harris 525. The question there was solely one of *taxation* on compensation. The professor receives compensation for his services as a teacher, but no compensation as a corporate officer, *i. e.*, he receives nothing that is taxable. The present aspect of his status was not before the court, and an incidental remark by the court from the standpoint of *taxation* cannot fairly be regarded as decisive of the question as it now arises. Such a distinction was recognized in Commonwealth *v.* Cuyler and Agnew, 5 W. & S. 275, where it was sought to tax the minister of an incorporated church as an officer of the corporation. GIBSON, C. J., said : The minister "is usually a corporate officer by virtue of the charter, yet his services as a corporator are not those which are compensa ed by his salary as a divine ; . . . . and where he receives nothing for his corporate services he receives nothing that is taxable." His salary as a *minister* was taxed at one per cent., but not because he was not an officer. In Miller *v.* Kirkpatrick, 5 Casey 226, at p. 230, the court, referring to this case, and to Union County *v.* James, said: "Conceding that he may be, in some senses, an officer, it is plain that he is not an officer within the meaning of the law regulating *taxation*."

[Philips *v.* Commonwealth *ex rel.* James.]

Mr. Justice STERRETT delivered the opinion of the court, October 3d 1881.

The contention of the relator in the court below was that the professorship, of which he was formerly the incumbent, is a corporate office, and that he was unjustly deprived of the rights and emoluments thereof by the illegal action of the trustees in declaring the chair vacant and afterwards electing the plaintiff in error to fill the same. The act of June 14th 1836, by which alone jurisdiction in quo warranto is given to the court of common pleas, provides, inter alia, that the writ may be issued, "In case any question shall arise concerning the exercise of any office in any corporation created by authority of law and having the chief place of business within the respective county :" Purdon, 1206, pl. 2. This clause of, the act is the only warrant the court had for entertaining the relator's application ; and it confers no jurisdiction, except in questions concerning the exercise of strictly corporate offices. It is only in such cases that the court can inquire by what authority the incumbent claims the office, and determine whether he usurps any right, privilege or prerogative granted by the Commonwealth. No authority is given to issue the writ against a mere servant, employé or agent of the corporation. It was therefore incumbent on the relator to show that the professorship of mathematics and natural philosophy in "The University at Lewisburg" is a corporate office, and that he was unjustly and illegally removed therefrom, and the defendant installed therein without authority. If the professorship in question is not a corporate office, within the meaning of the clause of the act above quoted, the relator had no standing in court, and the motion to quash should have been allowed. This is the vital question in the case, and if decided in favor of the plaintiff in error it will be unnecessary to consider the remaining questions.

An examination of the charter has led us to the conclusion that the professorships created by the trustees for the purpose of accomplishing the objects contemplated by the act of incorporation, are not in any proper sense of the term corporate offices, and that the incumbents are merely agents or employés of the corporation, whose services, if not regulated by contract with the board of trustees, may be dispensed with whenever the interests of the institution, in their judgment, demand it.

The charter provides that the university shall be under the government and supervision of trustees and curators. The trustees named in the act and their successors are made a body politic and corporate, with perpetual succession and all the incidents of a corporation, by the name, style and title of "The Trustees of the University at Lewisburg," by which name they

2 OUTERBRIDGE—26

and their successors are declared capable of holding real and personal property, receiving the rents, income, &c., and of doing and transacting all the business of the university, not otherwise provided for by the act, " and particularly of making and enacting ordinances and by-laws for the government and instruction of the university, . . . of electing or appointing the president, professors, tutors and other teachers of said university; of agreeing with them for their salaries and stipends; of removing them for misconduct, breaches of the ordinances of the institution or other sufficient cause; of appointing a chairman, secretary, treasurer and other officers necessary for managing the concerns of the corporation," &c.

The curators, named in the act, and " their successors in perpetual succession" are to be forever known by the title of " the curators of the University at Lewisburg." Their defined duties do not in any manner conflict with the power and authority vested in the trustees.

The authority conferred, in the first section of the fourth article, on the president, professors, tutors and other teachers, who, for the time being, compose the faculty of the university, or on the president and professors in conjunction with the curators, does not make the professors corporate officers. That section of the act merely defines, in certain particulars, the powers and duties of those who, for the time being, may happen to be incumbents of the professorships which may be established by the trustees. The number and character of the professorships to be created under the charter is left solely to the discretion of the trustees. They are authorized to appoint a president, together with such and so many professors, tutors and teachers as in their judgment will best promote the educational interests of the university; and when professorships are established and certain branches of instruction assigned to each, they are not necessarily permanent. They may be modified or even abolished and others created, whenever in the opinion of the trustees it becomes expedient. The mere creation of a professorship does not endow it with a fixed term of existence or give its incumbent a term either for life or good behavior. Corporate offices are such only as are expressly required by the charter. The professorship in question is manifestly not one of that character. In Union County *v.* James, the present relator, 9 Harris 525, the controlling question was substantially the same as in the present case. The county authorities claimed that the defendant, in that case, as the holder of an office, was liable to a tax of two per cent. on the amount of his salary as professor in the university. On the other hand, he contended that, if liable at all, it should be only one per cent., the tax imposed on pro-

fessions and occupations under the act of April 29th 1844; and it was held by this court that he was not "properly an officer of the corporation, but a person in its employment, and his salary ought to be taxed only one per cent. as for an occupation or profession." This accords with what appears to be the correct construction of the charter, and it therefore follows that the relator had no standing in court.

Judgment reversed, and it is ordered that the writ of quo warranto issued by the court below be quashed.